**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FERNANDO REAL, | : | CIVIL ACTION NO. **3:CV-11-2071** |
| | : | |
| Plaintiff | : | (Judge Brann) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| LT. DUNKLE, *et al.*, | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I.    Background.

On November 7, 2011, Plaintiff Fernando Real, formerly an inmate at the State Correctional Institution at Mahanoy, Pennsylvania ("SCI-Mahanoy"), filed the instant civil rights action, pursuant to  42 U.S.C. § 1983, §1985, §1981 and §1986.[1]  (Doc. 1).  Plaintiff also indicated that he was seeking declaratory relief under 21 U.S.C. §2201 and §2202.  Plaintiff stated that he was raising constitutional claims of civil conspiracy, retaliation and denial of access to the court.   Plaintiff also filed a Motion for leave to proceed *in forma pauperis*.[2]    (Doc. 5).

Plaintiff's claims were set forth on a form civil rights complaint routinely provided to inmates. (Doc. 1).   Attached to his form 3-page Complaint, Plaintiff submitted a 14-page handwritten Complaint with an Exhibit, Ex. A.  We referred to Plaintiff's 14-page handwritten Complaint as Doc.

---

[1]Plaintiff was construed as raising a conspiracy claim under §1985(3) since his allegations repeatedly referred to conspiracies.
    We note that on November 2, 2009, Plaintiff was transferred from SCI-Mahanoy to SCI-Coal Twp.  We also note that Plaintiff is presently confined at SCI-Graterford.

[2]We note that Plaintiff also has another §1983 civil rights action pending with this Court. *See Real v. Huber*, Civil No. 13-1054, M.D.Pa. Defendants submitted a copy of the Docket for Plaintiff's Civil No. 13-1054 case.  *See* Doc. 117-12, p. 130.

1A.

In his original Complaint, Plaintiff named the following fifteen (15) Defendants:  Lt. Dunkle, Lt. Malik, Sgt. Clark, Sgt. Meyers, C.O. Gormley, C.O. Murphy, C.O. "Hyslack" (sic), C.O. John Doe, Grievance Coordinator Mason, Lt. B.E. Mowrey, Lt. Burns, Sgt. Romig, C.O. Segedy, C.O. McMillan, and C.O. Dascani.[3]  (Doc. 1A, pp. 2-3).

Plaintiff stated that all Defendants were employees of the Pennsylvania Department of Corrections ("DOC") at either SCI-Mahanoy or SCI-Coal Twp.

Plaintiff basically alleged that, during his transfer from SCI-Mahanoy and SCI-Coal Twp., Defendants intentionally lost his personal property with documents showing their constitutional violations which prevented his grievances and denied him access to the courts.  Specifically, Plaintiff alleged that "Defendants intentionally lost [his] personal property, including documentation of previous [constitutional] violations [he] suffered at the hands of the Defendants." (Doc. 1A, p. 4).  Plaintiff further alleged that "by intentionally losing [his] documentation of [Defendants' constitutional] violations, [his] access to the courts [was] denied."  Plaintiff additionally averred that without his documentation, he was not able to raise his constitutional claims against Defendants in a §1983 civil rights action.  (*Id*.).  Further, Plaintiff alleged that additional documentation was lost pertaining to his pending criminal matter and criminal appeal which also resulted in a denial of his right to access to the courts.  Plaintiff stated that his documentation along with his other personal property such as photographs, was intentionally lost during his transfer from SCI-Mahanoy and SCI-Coal Twp. in retaliation for his grievances against prison staff.

---

[3]We note that the correct spelling of the name of Defendant CO "Hyslack" is Hauslyak.

In his form Complaint, Plaintiff indicated that he filed a grievance regarding his claims and that he completed the grievance process.[4]  (Doc. 1, p. 1).  However, in his handwritten Complaint, Plaintiff stated that unnamed Defendants refused to acknowledge his grievances and appeals, and that they prevented his administrative remedies from being investigated and exhausted under DOC policy.  Thus, Plaintiff alleged that unnamed Defendants hindered his grievances and made the DOC administrative remedy procedure unavailable to him.  (Doc. 1A , p. 4).

On December 28, 2011, we  screened Plaintiff's original Complaint as we were obliged to do under the PLRA.  *See Abdul-Akbar v. McKelvie*, 239 F. 3d 307, 314 (3d Cir. 2001); *Banks v. County of Allegheny*, 568 F.Supp.2d 579, 589 (W.D. Pa. 2008).[5]

We issued a Report and Recommendation ("R&R") and recommended that Plaintiff's claims for damages (both compensatory and punitive) against all Defendants in their official capacities be dismissed with prejudice.  (Doc. 9). We also recommended that Plaintiff's request for a specific amount of monetary damages, *i.e.* $10,000 in punitive damages from each Defendant, be stricken from his Complaint.

---

[4]Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit.  *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004); *Woodford v. Ngo*, 126 S.Ct. 2378 (2006).  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including civil rights  actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Id.*   However, Defendants have the burden to plead exhaustion as an affirmative defense.  *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

[5]This case has been assigned to the undersigned Magistrate Judge for pre-trial matters. *See* 28 U.S.C. § 636(b).

Additionally, we recommended that Plaintiff's Fourteenth Amendment due process claim regarding the alleged intentional misplacement of his property by Defendants Murphy, Dunkle, Meyers, John Doe, Gormley, Hauslyak, Malik and Clark, be dismissed with prejudice. We also recommended that Plaintiff's First Amendment denial of access to the court claim against Defendants Dunkle, Meyers, John Doe, Gormley, Hauslyak, Malik and Clark be allowed to proceed. Further, we recommended that Plaintiff's denial of access to the courts claim against Defendant Murphy be dismissed with prejudice.

Moreover, we recommended that Plaintiff's First Amendment retaliation claim against Defendants Dunkle, Meyers, John Doe, Hauslyak, Malik and Clark be dismissed with prejudice. We also recommended that Plaintiff's First Amendment retaliation claim against Defendants Murphy and Gormley be allowed to proceed.

We recommended that Defendants McMillan and Burns be dismissed without prejudice. We also recommended that Romig and Segedy be dismissed without prejudice.

Further, we recommended that Plaintiff's §1983 conspiracy claim be dismissed with prejudice. We also recommended that Plaintiff's §1985(3) conspiracy claim be dismissed with prejudice. Additionally, we recommended that Plaintiff's §1981 claim be dismissed with prejudice.

Moreover, we recommended that Defendants Mowrey, Dascani and Mason be dismissed with prejudice.

On February 23, 2012, Plaintiff filed objections to our R&R. (Doc. 12).

On April 23, 2012, the Court issued a Memorandum and Order and adopted, in part, and rejected, in part, our R&R. (Docs. 16 & 17). The Court granted Plaintiff 's *in forma pauperis*

Motion.  The Court dismissed with prejudice Plaintiff's claims for damages (both compensatory and punitive) against all Defendants in their official capacities struck Plaintiff's request for a specific amount of monetary damages, *i.e.* $10,000 in punitive damages from each Defendant, from his Complaint.

Additionally, the Court  dismissed with prejudice Plaintiff's Fourteenth Amendment due process claims against all Defendants.  The Court also dismissed with prejudice Plaintiff's §1981, §1985(3), and §1986 claims against all Defendants. The Court dismissed with prejudice  Plaintiff's §1983 conspiracy claim as against Defendants Grievance Coordinator Mason, Lt. Mowrey, Lt. Burns, Sgt. Romig, C.O. Segedy, C.O. McMillan, and C.O. Dascani.  The Court further dismissed with prejudice  Defendants Mason, Mowrey, Dascani.  The Court dismissed without prejudice Defendants Burns, Romig,  Segedy, and McMillan.  The Court directed that Plaintiff could file an amended Complaint to allege the personal involvement of Defendants Burns, Romig,  Segedy, and McMillan as to his First Amendment retaliation claim and his denial of access to the courts claim.

The Court also held that Plaintiff could proceed on his First Amendment retaliation claim as against Defendants Murphy, Dunkle, Meyers, John Doe, Gormley, Hauslyak, Malik, and Clark.  Further, the Court  held that Plaintiff could proceed on his First Amendment denial of access to the courts claim and his §1983 conspiracy claim as against Defendants Murphy, Dunkle, Meyers, John Doe, Gormley, Hauslyak, Malik, and Clark.

After the case was remanded to the undersigned, we issued an Order directing service of Plaintiff 's Complaint on remaining Defendants.  (Doc. 18).

On May 10, 2012, Plaintiff filed a 14-page handwritten Amended Complaint against

Defendants Dunkle, Murphy, Meyers, John Doe, Gormley, Hauslyak, Malick, Clark, and Chapman. (Doc. 26).  Plaintiff sued all nine (9) Defendants in both their individual and official capacities. Plaintiff attached as Ex. A to his Amended Complaint a copy of the a DOC Confiscated Items Receipt dated 9-13-08, regarding personal property, including envelopes of legal papers, confiscated from Plaintiff when he was confined at SCI-Mahanoy during an investigative search of his cell.

We then vacated our Doc. 18  Order directing service of Plaintiff 's original Complaint on remaining Defendants, and we issued an Order directing service of Plaintiff 's Amended Complaint on remaining Defendants as well as new Defendant Chapman.  (Docs. 25 & 27).

After being served with Plaintiff's Amended Complaint and after being granted an extension of time, Defendants Dunkle, Murphy, Meyers, Gormley, Hauslyak, Malick, Clark, and Chapman jointly filed an Answer with Affirmative Defenses on October 12, 2012. (Doc. 37).  Defendant John Doe was not served with Plaintiff's Amended Complaint since his identity was not known by Plaintiff.  Thus, on October 31, 2012, we issued an R&R and recommended that since Plaintiff had not shown good cause for his failure to provide the identify Defendant John Doe, that Plaintiff's Amended Complaint (Doc. 26) as against the John Doe Defendant be dismissed without prejudice under Rule 4(m).  (Doc. 39).

Plaintiff filed objections to our Doc. 39 R&R.  (Doc. 40).

On May 9, 2013, the Court issued an Order adopting our Doc. 39 R&R and dismissed Defendant John Doe without prejudice.  (Doc. 46).

We then issued scheduling orders and extended the case deadlines.  Extensive discovery

6

was then conducted by the parties, including the deposition of Plaintiff.  Plaintiff filed motions to

compel and other discovery related motions, and we resolved all of the motions.    Plaintiff also

filed a Motion for Leave to file a Second Amended Complaint to name four new Defendants, and

we denied this Motion.  (Doc. 98).

On November 7, 2013, Plaintiff filed a notice of change of his address stating that he was

transferred to  SCI-Graterford. (Doc. 87).  Plaintiff was then transferred to Philadelphia County

Prison on February 7, 2014, for his criminal trial, namely, a first degree murder jury trial.[6]   (Doc.

109).  Subsequently, Plaintiff notified the Court that he was transferred back to  SCI-Graterford on

March 7, 2014, his present place of confinement. (Doc. 113).

After the close of discovery, Defendants filed a Motion for Summary Judgment, pursuant

to Fed.R.Civ.P. 56, on March 21, 2014.  **(Doc. 115).**  Also, on March 21, 2014, Defendants filed

their Statement of Material Facts ("SMF") and Exhibits.  (Docs. 116 and 117, and 117-1 through

117-12).  Further, Defendants submitted an authenticated DVD video of Plaintiff 's transfer from

---

[6]We note that as one of their Exhibits in support of their Summary Judgment Motion, Defendants submitted  copies of Plaintiff's Criminal Dockets in Philadelphia County Court, No. CP-51-0008526-2008, No. CP-51-0207721-2004, and  No. CP-51-0008511-2008.  Plaintiff's Philadelphia County Court Criminal Dockets indicate that Plaintiff was convicted by a jury of first degree murder and robbery on February 28, 2014, and that he was sentenced to life imprisonment on April 25, 2014.  *See* Doc. 117-12.  Plaintiff Real's Criminal Dockets in Philadelphia County Court can be accessed at  http://ujsportal.pacourts.us.   We take judicial notice of Plaintiff Real's Criminal Dockets in Philadelphia County Court since they are state court records.  *See Santiago v. Saul*, Civil No. 13-0749, M.D.Pa.

Defendants also submitted a copy of Plaintiff's Criminal Docket in Schuylkill County Court, No. CP-54-0001004-2010.  Plaintiff's Schuylkill County Court Criminal Docket indicates that on June  2, 2011, Plaintiff plead guilty to recklessly endangering another person and he received a concurrent sentence on that date to another sentence he was serving.  *See* Doc. 117-12, p. 125.

SCI-Mahanoy to SCI-Coal Twp. on November 2, 2009. (Doc. 117-5).  On March 27, 2014, after

we permitted Defendants to exceed the page limit, Defendants filed their brief in support of their

Doc. 115 Motion, with attached unpublished decisions.  (Docs. 121 & 121-1).

On April 25, 2014, Plaintiff filed his opposition brief to Defendants' Doc. 115 Motion with

an unpublished opinion attached, his response to Defendants' SMF with a copy of his Amended

Complaint attached, and his 9-page, 26-paragraph handwritten unsworn Declaration with

Attachments, Atts. A-E, and a copy of Defendant Gormley's unsworn Declaration filed in this case

with an Inventory (No. B355732) of Plaintiff 's personal property attached.[7]  (Docs. 125-127).

On May 9, 2014, Defendants filed their reply brief.  (Doc. 128).

Defendants' **Doc. 115** Motion for Summary Judgment is ripe for disposition.  As noted

above, we have been assigned this case for pre-trial matters.

As Plaintiff recognizes, this Court has jurisdiction over this case pursuant to 28 U.S.C. §1331

and §1343(a). The Court can exercise supplemental jurisdiction over Plaintiff's state law claims

under §1367.

## II.    Allegations of Amended Complaint (Doc. 26).

As mentioned, remaining Defendants are Dunkle, Murphy, Meyers, Gormley, Hauslyak,

Malick, Clark, and Chapman.  Defendant Doe was dismissed.   Plaintiff's Amended Complaint is

very similar to his original Complaint.   In his 14-page handwritten Amended Complaint, Plaintiff

Real basically alleges that Defendants confiscated and destroyed his documents when he was

---

[7]Plaintiff actually marked as his Exhibits 1-3 to his Response to Defendants' SMF, his
Amended Complaint, his unsworn Declaration, and a copy of Defendant Gormley's unsworn
Declaration, respectively.

transferred out of SCI-Mahanoy (to SCI-Coal Twp.) regarding constitutional claims he had against prison staff which were not related to his instant case. Plaintiff avers that "every document [he] possessed regarding the constitutional violations were destroyed." (Doc. 26, p. 9). Plaintiff also avers that the documentation consisted of "grievances, notation[s] and request slips, Affidavit[s] and Declarations from inmates to attest to the constitutional violations." Plaintiff further states that "The documents destroyed were evidence as well as a written record of the [alleged constitutional] violations." (*Id.*). Plaintiff contends that since his documents were destroyed, he could not meet the minimum pleading standard to file a civil rights Complaint against prison staff, especially since he could not recall dates and the names of staff who were involved with the alleged constitutional violations. Plaintiff states that his destroyed documents showed that his rights were violated by prison staff when he was confined in the RHU at SCI-Mahanoy, and that his 2-year statute of limitations to file a §1983 civil rights action against the staff expired. Thus, Plaintiff alleges that Defendants in the present case violated his First Amendment right to access to the court and that he suffered an actual injury due to the destruction of his documents which showed that his constitutional rights were previously violated when he was confined in the RHU at SCI-Mahanoy. Plaintiff further avers that he can no longer assert these claims since the claims are now time barred. (*Id.*, p. 10).

Plaintiff also alleges that documents were destroyed regarding his state court criminal homicide case, including an Affidavit from a witness (who Plaintiff was previously unaware of) stating that he (the witness) received a dying declaration from the victim in Plaintiff's homicide case in which the victim declared (minutes before he died) that a person other than Plaintiff "shot him

9

to death."  Plaintiff states that "[t]his Affidavit and the mail [he] received from this [new] witness were destroyed by the Defendants prior to [him] having the opportunity to raise or preserve this newly discovered evidence in a [PA] state Post Conviction Relief Act [PCRA] Petition."   Plaintiff states that he could not remember the full name of the new witness or his address.  Thus, Plaintiff alleges that the destruction of these exculpatory documents hindered his state court criminal appeal of his murder conviction and life-imprisonment sentence, and that these documents may have exonerated him.  (*Id*.).

Plaintiff also avers that Defendants destroyed his personal mail, including mail from his family members, and that he does not have their addresses anymore and can no longer send them mail.  (*Id*., pp. 10-11).  Thus, Plaintiff asserts that Defendants deprived him of his right to associate with his family members.

Further, Plaintiff avers that Defendants destroyed his photographs and sentimental personal property.  Plaintiff states that since Defendants knew he previously went on a hunger strike when his property was confiscated in January 2009 during his confinement in the RHU at SCI-Mahanoy until it was returned, Defendants retaliated against him when he was being transferred out of SCI-Mahanoy to SCI-Coal Twp. by again confiscating his property and "by striking [him] were it hurt the most."  Plaintiff alleges that Defendants' conduct caused him to suffer anxiety, loss of appetite, psychological injuries, and loss of enjoyment of life.[8]  (*Id*., p. 11).

---

[8]To the extent that Plaintiff Real is seeking monetary damages for mental and emotional anxiety, we note that under 42 U.S.C. §1997e(e), he must allege in his amended pleading physical harm Defendants caused him.  *See Allah v. Al-Hafeez*, 226 F. 3d 247, 251 (3d Cir. 2000); *Mitchell v. Horn,* 318 F.3d 523, 533 (3d Cir. 2003); *Kantamanto v. King*, 651 F. Supp. 2d 313, 320 n. 1 (E.D. Pa. 2009)(inmate cannot obtain compensatory damages for pain and

As one of his state law claims in his Amended Complaint, Plaintiff asserts that the destruction of his property by Defendants violated his rights under Article I Section 1 of the Pennsylvania Constitution.[9]  (*Id.*, p. 11).

Plaintiff also raises a claim of First Amendment retaliation against Defendants stating that Defendants destroyed his property in retaliation for his previous filings of prison grievances against staff.  (*Id.*, p. 12).

Additionally, Plaintiff raises a claim of First Amendment denial of access to the courts against Defendants stating that Defendants destroyed his property to prevent him from filing constitutional claims against prison staff in another §1983 civil rights action. (*Id.*, p. 12).  Further, Plaintiff asserts a §1983 conspiracy claim against Defendants and a freedom of association claim under the First and Fourteenth Amendments.

 Plaintiff also appears to raise a PA state law claim of Intensional Infliction of Emotional Distress ("IIED") against Defendants alleging that due to Defendants' extreme and outrageous conduct in destroying his personal property, including his legal documents, they caused him severe emotional distress.  (*Id.*).

 As relief, Plaintiff seeks declaratory judgment that the alleged conduct by Defendants violated his rights under the U.S. Constitution and the PA Constitution. Plaintiff also seeks

---

suffering in civil rights action since he did not allege any  physical injury).  We do not find that Plaintiff alleges any physical harm with respect to his claims against Defendants.

[9]As discussed below, to the extent that Plaintiff Real is seeking monetary damages for violations of his PA constitutional rights, the law is clear that he cannot recover such damages. *See Moeller v. Bradford Co.*, 444 F. Supp. 2d 316, 327, n. 13 (M.D. Pa. 2011).

compensatory and punitive damages against each Defendant only in their individual capacities.[10]
(*Id.*, p. 13).

### III.   Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051, *3 (M.D. Pa.). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[11]  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Phillips v. Miller*, 2010 WL 771793, *2 (M.D. Pa.).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*.  It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement.  *Id.*  Each named defendant must be shown, through the complaint's

---

[10]As stated above, Plaintiff's requests for damages against Defendants  in their official capacities were previously dismissed with prejudice by the Court.

[11]Plaintiff alleged in his pleadings that all of the individual Defendants were employees of the PA DOC.  This is sufficient to show that Defendants are state actors.

allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

*See also Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051,*3("a prerequisite for a viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation of a Plaintiff's constitutional rights.") (citing *Rode, supra.*).

## IV.     Motion for Summary Judgment.

A motion for summary judgment may not be granted unless there is not genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the suit. *Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004). The moving party may demonstrate that no genuine dispute as to any material fact exists by citing to pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits. Fed. R. Civ. P. 56(c). The reviewing court may consider any materials in the record in determining whether there exists a genuine issue of material fact. Fed. R. Civ. P. 56(c)(3). An issue of fact is "'genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving lack of genuine issue of material fact is initially on the moving party. *Childers*, 842 F.2d at 694 (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The burden of proof shifts to the nonmoving party, however, when the moving party demonstrates no such genuine issue of fact. *Forms, Inc. v. Am. Standard, Inc.*, 546 F. Supp. 314, 321 (E.D. Pa. 1982), *aff'd. mem.*, 725 F.2d 667 (3d Cir. 1983). The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

In determining the existence of an issue of material fact, the reviewing court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). As such, the court must accept the nonmoving party's allegations as true and resolve any conflicts in his or her favor. *Id.* (*citing Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), cert. denied, 429 U.S. 1038 (1977).

## V.   Discussion.

As mentioned, and as Plaintiff correctly indicates, the Court has jurisdiction over his §1983 civil rights action pursuant to 28 U.S.C. §1331 and §1343(a), and it can exercise supplemental jurisdiction over Plaintiff's state law claims under §1367.

With regards to Plaintiff's damages claim under Article I, Section 1 of the Pennsylvania Constitution, *i.e.*, a violation of the right to acquire, possess and protect property, we will recommend that this claim for damages be dismissed with prejudice.  We agree with Defendants that "[t]he prevailing view is that Pennsylvania does not recognize a private rights of action for

14

damages in a suit alleging violation of the Pennsylvania Constitution." (Doc. 121, pp. 29-30, citing

*Gary v. Braddock Cemetery*, 517 F.3d 195, 207 n. 4 (3d Cir. 2008)).

In *Bowers v. City of Phila.*, 2008 WL 5210256, *8 (E. D. Pa.), the Court stated:

> "To date, neither Pennsylvania statutory a authority nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution." *Dillon v. Homeowner's Select*, 957 A.2d 772, 780 n. 11 (Pa. Super. Ct. 2008) (quoting *Jones v. City of Phila.*, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006), *appeal denied*, 589 Pa. 741, 909 A.2d 1291(Pa. 2006)).   Accordingly, we agree with Defendants' undisputed assertion that Plaintiff's claims for damages under the Pennsylvania Constitution fail as a matter of law.  *See Stockham Interests, LLC v. Borough of Morrisville*, No. 08-3431, 2008 WL 4889023, at * 10 (E.D. Pa. Nov. 12, 2008) (holding that "there is no private cause of action for damages arising from violations of the Pennsylvania Constitution," and granting defendant's request "to deny any monetary relief arising out of violations of the Pennsylvania Constitution," and granting defendant's request "to deny any monetary relief arising out of violations of the Pennsylvania Constitution") (citations omitted); *Alvarez v. City of Phila.*, No. 07-0493, 2008 WL 4347529, at * 13 (E.D. Pa. Sept. 23, 2008) (granting summary judgment in favor of defendant since "Pennsylvania does not recognize a private right of action for monetary damages for violation fo the Pennsylvania Constitution"); *Douris v. Schweiker*, 229 F.Supp.2d 391, 405 (E.D. Pa. 2002) (explaining that although Pennsylvania courts have not yet addressed the issue, federal courts have consistently held that no private cause of action for damages is available under the Pennsylvania Constitution); *Kelleher v. City of Reading*, No. 01-3386, 2001 WL 1132401, at * 3 (E.D. Pa. Sept. 24, 2001) (noting that "the federal courts in this Circuit . . .  have concluded that there is no such private cause of action for damages under the Pennsylvania Constitution," and citing cases); *Pendrell v. Chatham Coll.*,386 F. Supp. 341, 344 (W.D. Pa. 1974) (rejecting Pennsylvania constitutional claim for damages and noting that plaintiff could cite no authority that implies such a cause of action).

Thus, Plaintiff's claim for damages under the Pennsylvania Constitution should be dismissed with prejudice as a matter of law.  *See Moeller v. Bradford Co.*, 444 F. Supp. 2d 316, 327, n. 13 (M.D. Pa. 2011)("Pennsylvania has no statutory equivalent to 42 U.S.C. § 1983, which provides a private right of action for a federal constitutional violation.")(citations omitted).

Furthermore, with regards to Plaintiff's request for declaratory judgment, we find that the Court should dismiss with prejudice this request.  Plaintiff simply asks the Court to declare that the alleged conduct by Defendants in confiscating and destroying his property and legal material violated his rights under the U.S. Constitution and the PA Constitution.  (Doc. 26, p. 13). Plaintiff lacks standing to have the Court declare the past alleged conduct of Defendants at his former places of confinement unconstitutional.

In *Blakeney v. Marsico*, 340 Fed.Appx. 778, 780 (3d Cir. 2009), the Third Circuit Court stated:

> To satisfy the standing and "case or controversy" requirements of Article III, a party seeking a declaratory judgment "must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bauer v. Texas,* 341 F.3d 352, 358 (5th Cir.2003) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 102-03, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). Here, Blakeney seeks a declaration merely that defendants' "acts" and "policies" violate the United States and Pennsylvania Constitutions. He does not allege that he will be subjected to that alleged conduct in the future. Moreover, even if defendants violated Blakeney's rights in the past as he alleges, he is not entitled to a declaration to that effect. *See Brown v. Fauver,* 819 F.2d 395, 399-400 (3d Cir.1987) (directing District Court to dismiss prisoner's Section 1983 claim for prospective relief where appellant "has done nothing more than allege past exposure to unconstitutional state action").

Plaintiff, who is no longer confined at SCI-Mahanoy and at SCI-Coal Twp., does not allege

16

facts from which it appears there is a substantial likelihood that he will again suffer the alleged constitutional violations in the future.   Additionally, even if Defendants violated Plaintiff's rights in the past as he alleges, Plaintiff is not entitled to a declaration to that effect. Thus, Plaintiff fails to properly state a claim for declaratory relief and he lacks standing for such relief.  *See Blakeney, supra*. Therefore, we will recommend that Plaintiff's request for declaratory relief be dismissed from this case with prejudice.   Based on the above discussion, we find that it would be futile for the Court to allow Plaintiff to amend his Amended Complaint with respect to his stated request for declaratory relief.  *See Blakeney, supra*.

Defendants also argue that Plaintiff's IIED claim should be dismissed since it is barred by sovereign immunity against state actors under 42 Pa.C.S.A. §8522.  (Doc. 121, pp. 30-31).    We agree with Defendants and find that the DOC Defendants are entitled to sovereign immunity regarding Plaintiff's IIED claim.  42 Pa.C.S.A. §8522(b); *Freeman v. Miller*, 2011 WL 4591974, *14 (M.D.Pa. Sept. 30, 2011)(Court dismissed inmate's IIED and negligence claims against DOC Defendants because the Pennsylvania state legislature did not specifically waive immunity with respect to these types of state law claims.)(citations omitted).

Thus, we will recommend that Defendants' Motion for Summary Judgment be granted with respect to both of Plaintiff's state law claims raised in his Amended Complaint, *i.e.*, damages claim under the PA Constitution and IIED claim against Defendants.   Since we find that it is futile for the Court to allow Plaintiff to amend his Amended Complaint with respect to his state law claims against Defendants, we will recommend that Judgment be entered in favor of Defendants and

against Plaintiff with respect to his state law claims.[12]

In their reply brief, Defendants state that they are entitled to summary judgment with respect to Plaintiff's freedom of association claim and his §1983 conspiracy claim, and with respect to all of his claims against Defendants Meyers, Clark, Chapman, and Hauslyak since these Defendants lack the requisite personal involvement. (Doc. 128, pp. 1-2).

With respect to all of Plaintiff's claims against Defendants Meyers, Clark, Chapman, and Hauslyak, we agree with Defendants that Plaintiff has conceded in his opposition brief that the stated four (4) Defendants are entitled to summary judgment since they lack the requisite personal involvement. (Doc. 125, p. 8). As stated above, a Plaintiff in a §1983 civil rights action must show that each Defendant was personally involved with the alleged violation of his constitutional rights. *See Sutton v. Rasheed*, 323 F.3d 236, 249-250 (3d Cir. 2003). As Defendants point out, Plaintiff admits in his opposition brief that Defendants Meyers, Clark, Chapman, and Hauslyak do not have any personal involvement regarding his constitutional claims, and that "these individuals were mistakenly identified as [] Defendants." (*Id.*). Plaintiff does maintain that he has shown Defendants Murphy, Gormley, Dunkle and Malick were personally involved with the violations of his constitutional rights. (*Id.*).

---

[12]Defendants are also correct in that "[a] district court may decline to exercise supplemental jurisdiction over a claim when the court has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. §1367(c)(3)." *Freeman v. Miller*, 2011 WL 4591974, *14 n. 12. Thus, if the Court grants Defendants' summary judgment motion with respect to Plaintiff 's federal claims, we also find that the Court should not exercise supplemental jurisdiction over Plaintiff's state law claims.

Thus, we will recommend that Defendants Meyers, Clark, Chapman, and Hauslyak be granted summary judgment with respect to all of Plaintiff's remaining claims, and that Judgment be entered in favor of these four (4) Defendants.

In their reply brief, Defendants also state that Plaintiff, in his filings in opposition to their Summary Judgment Motion, Docs. 125, 126 & 127, does not contest their argument made in their initial brief (Doc. 121, pp. 25-27) that they are entitled to summary judgment with respect to his freedom of association claim. (Doc. 128, pp. 1-2). Additionally, Defendants state Plaintiff does not contest their argument made in their initial brief (Doc. 121, pp. 27-28) that they are entitled to summary judgment with respect to his §1983 conspiracy claim. (Doc. 128, pp. 1-2). We have reviewed Plaintiff's filings in opposition to Defendants' Summary Judgment Motion, Docs. 125, 126 & 127, and agree with Defendants that Plaintiff has not contested their arguments that they are entitled to summary judgment with respect to his freedom of association claim and with respect to his §1983 conspiracy claim. We also agree entirely with Defendants that there is no evidence showing that they violated Plaintiff's First Amendment right to freedom of association and, that there is no evidence that they engaged in a conspiracy to violate Plaintiff's constitutional rights.[13] (Doc. 121, pp. 25-28).

Further, we do not find that Plaintiff has established a §1983 conspiracy claim against Defendants. As indicated above, the Court held in its Doc. 17 Order that Plaintiff could proceed on his §1983 conspiracy claim as against Defendants Murphy, Dunkle, Meyers, John Doe, Gormley,

---

[13]Defendants are also correct that the District Court already dismissed Plaintiff's intimate association claim with prejudice as against Defendants Murphy, Dunkle, Meyers, Gormley, Hauslyak, Malik, and Clark. (Doc. 121, p. 26, Doc. 16, p. 12 and n. 7 & Doc. 17, ¶ 2).

Hauslyak, Malik, and Clark.  Defendant Doe was subsequently dismissed.  We find that Plaintiff has not submitted evidence to support his bare conclusory allegations of a §1983 conspiracy against Defendants.  *See Flanagan v. Shively*, 783 F. Supp. 922, 928-29 (M.D. Pa. 1992), aff'd. 980 F. 2d 722 (3d Cir. 1992), *cert. denied* 510 U.S. 829 (1993).  "The Plaintiff's allegations [of conspiracy] must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives.  Bare conclusory allegations of 'conspiracy' ... will not suffice to allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred."  *Id*. at 928.

As the Court stated in *Dennison v. Pa. Dept. of Corrections*, 268 F. Supp. 2d 387, 401 (M.D. Pa. 2003):

> To sustain a conspiracy claim under section 1983, [Plaintiff] must establish that: (1) defendants deprived him of a right secured by the Constitution or laws of the United States and (2) conspired to do so while acting under color of state law.  *Adickes v S. H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Marchese v. Umstead,* 110 F.Supp.2d 361, 371 (E.D. Pa. 2000).  Additionally, "'to [s]ufficiently allege a conspiracy, a plaintiff must show a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose.'" *Marchese*, 110 F.Supp.2d at 371 (quoting *Panayotides v. Rabenold*, 35 F.Supp.2d 411, 419 (E.D. Pa. 1999)) (other internal citations omitted).  "'A plaintiff must make specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events.'" *Id*. (quoting *Panayotides v. Rabenold*, 35 F.Supp.2d 411, 419 (E.D. Pa. 1999)) (other internal citations omitted).

We agree with Defendants and find that "there is absolutely no evidence in the record of any agreement to deprive Plaintiff of a constitutional right." (Doc. 121, p. 28). Also, as Defendants point out, "there is no evidence that Defendants had a meeting of the minds, an understanding, or combined plan to seize or destroy Plaintiff 's property thereby resulting in an alleged deprivation of a constitutional right." (*Id.*). We find that Plaintiff failed to present evidence to show any role or agreement of Defendants in the alleged conspiracy to conceal or intentionally misplace and destroy his property. Plaintiff fails to show what Defendants specifically conspired to do and what specific actions these Defendants took in furtherance of the alleged conspiracy to hide and destroy his missing property. Thus, we find that Plaintiff fails to present any evidence "showing an agreement or plan formulated and executed by Defendants to achieve a conspiracy." *Ireland v. McDaniel*, 2011 WL 860390, *13-*14("To Demonstrate a conspiracy under section1983, 'a Plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of state law.'"(citations omitted).

Thus, we will recommend that Defendants be granted summary judgment with respect to Plaintiff's §1983 conspiracy claim and with respect to Plaintiff's freedom of association claim.

We now turn to the exhaustion issue. As discussed, the only remaining Defendants are Dunkle, Malick, Murphy, and Gormley, and Plaintiff's only remaining claims are his First Amendment retaliation claim and denial of access to the court claim.

In his handwritten original Complaint, Plaintiff stated that unnamed Defendants refused to acknowledge his grievances and appeals, and that they prevented his administrative remedies from being investigated and exhausted under DOC policy. Thus, Plaintiff alleged in his original

Complaint that unnamed Defendants hindered his grievances and made the DOC administrative remedy procedure unavailable to him. (Doc. 1A , p. 4).  In his Amended Complaint, Plaintiff avers that after he was transferred from SCI-Mahanoy to SCI-Coal Twp., he discovered that his personal property was seized and destroyed, and that he "repeatedly submitted grievances concerning the Defendants at SCI-Mahanoy unlawfully destroyed [his] property in retaliation for filing grievances and seeking to file a [civil rights action under §1983.]" Plaintiff then states that "none of [his] grievances were processed or acknowledge[d]."  Plaintiff alleges that he was later advised by a DOC employee that he had to submit documentation with his grievances regarding his loss of property claim to prove that he once possessed the items of his property he contended were missing. However, Plaintiff avers that [s]ince the Defendants destroyed all documentation [he] possessed pertaining to his property, [he] had no documentation to submit [with his grievances] as proof." Plaintiff further avers that there was a document, which he did not have at the time, but could prove that he once possessed some of the items he claimed were destroyed, namely, an Inventory Sheet completed about September 13, 2008, at SCI-Mahanoy, which was the last Inventory sheet he had during his confinement at SCI-Mahanoy. (Doc. 26, p. 6). As stated, Plaintiff attached a copy of DOC Confiscated Items Receipt No. A 608876 dated 9-13-08, as Ex. A to his Amended Complaint.

Plaintiff also alleges that the Inventory Sheet completed about September 13, 2008, at SCI-Mahanoy listed all of the items which Plaintiff now complains were destroyed except for the alleged Affidavit about the dying declaration of the victim in his homicide criminal case and his documents about the alleged constitutional violations Plaintiff claims he later experienced in the RHU at SCI-

Mahanoy. (*Id*., p. 7). Plaintiff alleges that he then submitted requests slips and filed grievances to try and get a copy of the September 13, 2008 Inventory Sheet so that he could submit it with his grievances raising his instant constitutional claims about the destruction of his personal property. Plaintiff states that he was told by former Defendant Doe that the Inventory Sheet was not in his file and that it could not be found.  Plaintiff further alleges that "Defendants Dunkle, Malick, Clark, Meyers, Doe,  Hauslyak, Murphy, Chapman and Gormley destroyed the Goldenrod copy [he] possessed of the [September 13, 2008 Inventory Sheet] and tampered with [his] file by removing and destroying the copy that was in [his] file."  Additionally, Plaintiff alleges that Defendants "also destroyed all documentation [he] had concerning his property" and that Defendants destroyed all of the documents that he could have used to prove that he once possessed the items he was claiming Defendants destroyed.  (*Id*., p. 8).

Thus, Plaintiff essentially claims that he was hindered in his ability to exhaust his DOC administrative remedies with respect to his instant constitutional claims, and that due to Defendants' alleged conduct, he could not submit the required documentation with his grievances regarding his loss of property claim to prove that he once possessed the items of his property he contended were missing.

Plaintiff's Declaration(Doc. 127, Att. C), which he submitted in response to Defendants' summary judgment filings, attempts to address the reasons why he did not exhaust his DOC administrative remedies with respect to his present constitutional claims that Defendants confiscated and destroyed his personal property when he was transferred from SCI-Mahanoy to SCI-Coal Twp. on November 2, 2009, as retaliation and to deny him access to the courts.  (Doc.

127, ¶'s 12-18).  Also, in his Response to Defendants' SMF, Plaintiff repeats his averments as to why he did not exhaust his DOC administrative remedies regarding his instant constitutional claims against Defendants.  (Doc. 116, ¶'s 48-68 & Doc. 126, ¶'s 48-68).

We also find that Defendants have submitted evidence that Plaintiff failed to properly exhaust his DOC administrative remedies with respect to his instant First Amendment retaliation and denial of access to the court claims.  (Doc. 116, ¶'s 49-63).[14]  As discussed below, we find that the evidence of the parties pertaining to the exhaustion issue is not disputed and that genuine issues of material fact do not exist as to whether Plaintiff failed to timely exhaust his DOC administrative remedies and whether Plaintiff's instant constitutional claims are now procedurally defaulted.

As their first argument in support of their Summary Judgment Motion, Defendants assert that Plaintiff Real failed to properly exhaust his DOC administrative remedies with respect to his constitutional claims regarding his First Amendment retaliation and denial of access to courts claims pertaining to the alleged destruction of his personal property when he was transferred from SCI-Mahanoy to SCI-Coal Twp. on November 2, 2009, as required under the Prison Litigation Reform Act ("PLRA").  *See Spruill v. Gillis*, 372 F.3d 218, 226 (3d. Cir. 2004)(Third Circuit held that the failure to exhaust administrative  remedies by an inmate constitutes procedural default under the PLRA).  Specifically, Defendants state "Plaintiff claims his property was seized and destroyed by the

---

[14]Since Defendants cited to their evidence of record to support each of their paragraphs in their SMF, we do not repeat herein Defendants' citation to the record. (*See* Doc. 116).  We also note that Defendants' SMF largely pertain to the DOC administrative remedy process and to the issue of whether Plaintiff properly exhausted his constitutional claims.  With respect to the DOC administrative process in general, Plaintiff, for the most part, admits to Defendants' SMF.  (*See* Doc. 116, ¶'s 11-41 and Doc. 126, ¶'s 11-41).

Defendants during his transfer from  SCI-Mahanoy to SCI-Coal Twp. on November 2, 2009 (Doc. 26, ¶'s 88-95); however, Plaintiff has procedurally defaulted on these claims because he did not properly exhaust his administrative  remedies." (Doc. 121, p. 10).

The undisputed evidence submitted by both Plaintiff and Defendants reveals that Plaintiff did not exhaust his DOC administrative remedies with respect to his instant constitutional claims. However, as stated, Plaintiff contends that he was prevented from exhausting his DOC administrative remedies since Defendants hindered his attempts to obtain the required proof showing that he once possessed the missing personal property to submit with his grievances.  There is no question that the DOC revised its administrative remedy policy in **December 2010**, requiring an inmate filing a grievance about a claim of missing property to provide documentation to prove that he once possessed the items allegedly missing.  (Doc. 116, ¶ 34 & Doc. 126, ¶ 34)(emphasis added).   As Defendants correctly point out, this revised policy requiring an inmate to submit evidence to show that he owned the property he claimed was missing "did not become part of DC-ADM 804 until a year ***after*** Plaintiff's time for filing the grievance had expired." (Doc. 121, pp. 16-17, citing Doc. 116, ¶ 34)(emphasis original).  Plaintiff's averments in his Declaration regarding his attempts to exhaust his administrative remedies are thus not consistent with this revised DOC policy since the policy did not go into effect until **one year after** Plaintiff's deadline expired to file his administrative remedies regarding his present constitutional claims (*i.e.*, December 28, 2009). (Doc. 127, ¶'s 14-18).  As stated, Plaintiff avers that Defendants hindered his ability to exhaust his administrative remedies regarding his claims that his personal property was confiscated and destroyed as retaliation and to deny him access to the court since they thwarted his ability to obtain

the necessary documentation to file his grievance in accordance with the revised DOC policy.  As mentioned, Plaintiff also states that Defendants removed a copy of the September 13, 2008 Inventory Sheet from his file to prevent him from timely submitting it with his grievances raising his instant claims about the destruction of his personal property since the September 13, 2008 Inventory Sheet would have complied with the revised (**December 2010)** DOC policy.  However, as stated, the revised evidentiary requirement to which Plaintiff refers as the basis for his untimely submission of his administrative remedy did not go into effect until one year after his administrative remedy regarding his constitutional claims in this case was due.  Thus, we agree with Defendants that there is no merit to Plaintiff's contention that he was prevented from timely submitting his grievance raising his instant constitutional claims discovered on December 4, 2009, since his attempt to obtain evidence showing he possessed his missing legal property was thwarted by Defendants.  As stated, the evidence is clear that the revised administrative remedy policy requiring proof of ownership of alleged missing property was not in effect at the time Plaintiff's grievance was due, and did not go into effect until one year after Plaintiff 's deadline expired to file his grievance, *i.e.*, in **December 2010**.

There is no doubt that "failure to exhaust is an affirmative defense that must be pled and proven by the Defendant." *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002)(citing *Ray v. Kertes*, 285 F.2d 287, 295 (3d Cir. 2002)).  In *Ray*, the Third Circuit held that a Defendant could raise the exhaustion issue either by a Motion to Dismiss, "in appropriate cases," or by a Motion for Summary Judgment.  *See Ray v. Kertes*, 285 F.2d at 295  n. 8. We find that Defendants have properly raised the exhaustion issue *via* a  Summary Judgment  Motion in the present case.

26

"It is well-settled that where there are factual questions concerning the extent of an inmate's efforts to exhaust [his] grievances summary judgment in favor of the Defendants clearly is not appropriate." *Williams v. Bledsoe*, 2013 WL 5522848, *18 (M.D. Pa. Oct. 3, 2013)(citations omitted); *Wakeley v. Giroux*, 2014 WL 1515681 (M.D.Pa. April 15, 2014)(citations omitted). Plaintiff contends that after his November 2, 2009, transfer from SCI-Mahanoy to SCI-Coal Twp., he discovered that some of his legal property was missing on December 4, 2009. (Doc. 116, ¶ 48). Plaintiff also avers in his Declaration that after he discovered his missing box of legal property, he submitted a grievance at SCI-Coal Twp. on December 7, 2009, alleging that Defendants Dunkle, Malick, Murphy, and Gormley seized and/or destroyed his legal property and other personal property in order to prevent him from filing a §1983 action against prison staff and in retaliation for his prior grievances against staff. Plaintiff further avers that the stated Defendants denied him access to the court since his newly discovered evidence about who allegedly shot the victim in his first degree murder case was destroyed preventing his criminal appeal.     (Doc. 127, ¶ 12).   Thus, Plaintiff contends that he raised his instant First Amendment claims against Defendants Dunkle, Malick, Murphy, and Gormley in the December 7, 2009,  grievance he allegedly tried to submit at SCI-Coal Twp. Plaintiff attached as Att. C to his Declaration a copy of the alleged grievance he submitted on December 7, 2009. (Doc. 127, Att. C).  However, Att. C to Plaintiff's Declaration is a copy of a grievance dated December 4, 2009, but it was not signed as received by the  Grievance Coordinator at  SCI-Coal Twp. and it was not given a Grievance tracking Number.  Further, there is simply no evidence to substantiate Plaintiff 's averment (Doc. 127, ¶ 13) that he actually tried to submit the grievance on December 7, 2009, and that he was then told by the prison Grievance

Coordinator at SCI-Coal Twp., namely, Dascani, that the December 4, 2009, grievance would not be acknowledged or filed since it involved his criminal appeal.  Plaintiff also avers that based on the alleged instructions of Dascani, he did not submit another grievance regarding his missing property which he discovered on December 4, 2009, and regarding his instant constitutional claims, before the December 28, 2009, grievance deadline expired.  (Doc. 127, ¶ 13).  We find that Att. C to Plaintiff's Declaration is hearsay which would be inadmissable at trial and we shall not consider it herein.  *See Brown v. Shannon*, 2013 WL 877163, *6 (M.D.Pa. March 8, 2013).  We find that Plaintiff could have prepared his Att. C on a blank DOC grievance form at any time.  We also agree with Defendants (Doc. 128, p. 6) that Plaintiff's Doc. 127 Declaration is a sham affidavit insofar as Plaintiff avers that he attempted to submit his December 4, 2009, grievance, marked as Att. C to his Declaration, but was not allowed. We further note that Defendants have not submitted any evidence showing that the December 4, 2009, grievance (Doc. 127, Att. C) Plaintiff allegedly tried to file was ever received by the Grievance Coordinator at  SCI-Coal Twp. and rejected.

In the case of *Brown v. Shannon*, 2013 WL 877163, *6, the Plaintiff inmate submitted to the court a grievance form which he dated but it had no other indication that it was actually filed with prison staff.  The Court pointed out that Plaintiff Brown's purported grievance form did not include a tracking number and, that prison staff did not sign it and had no record that it was filed.  The Court also stated that Plaintiff Brown did not submit any evidence that prison staff mishandled or destroyed the grievance form.  The Court concluded that "[a]ll competent evidence of record demonstrates that Brown failed to properly exhaust administrative remedies."  *Id*.

28

In the present case, we find that the competent evidence of record shows that Plaintiff Real did not submit the December 4, 2009, grievance which is Att. C to his Doc. 127 Declaration.  Thus, the undisputed evidence shows that Plaintiff did not submit any timely grievance regarding his missing legal property, which he discovered on December 4, 2009, and regarding his instant constitutional claims, prior to the December 28, 2009, grievance deadline.

Additionally, the undisputed evidence also shows that Plaintiff Real did in fact submit three (3) grievances after his November 2, 2009, transfer to SCI-Coal Twp. regarding his personal property.  (*See* Doc. 116, ¶'s 36-47 & Doc. 126, ¶'s 36-47).  The evidence also shows that Plaintiff's three (3) grievances did not raise his instant constitutional claims against the remaining Defendants. Further, the evidence shows that Plaintiff's three (3) grievances were received by prison staff at SCI-Coal Twp., that they were assigned tracking numbers, Nos. 296232, 296240 and 297383, and that Plaintiff received responses to them.  (*Id.)*.  As such, there is no question that the DOC administrative remedy process were completely available to Plaintiff Real after his transfer to SCI-Coal Twp.

In the present case, there are no factual disputes that Plaintiff Real did file Grievance No. 384574 on October 7, 2011, claiming as follows:  "[he] suffered abuse at the hands of unnamed RHU staff; he was retaliated against by unnamed staff for filing grievances; his legal material was lost or destroyed; and without these materials his intention to file a §1983 lawsuit was destroyed." (Doc. 116, ¶'s 49-50, Doc. 126, ¶'s 49-50, & Doc. 117, Ex. 8  Moore Declr.,¶ 17, Att. D).  There is also no dispute that the only prison staff identified in Plaintiff's  Grievance No. 384574 was Defendant Gormley.  (Docs. 116 & 126 at ¶ 51 and Moore Declr.,¶ 18).  Plaintiff attached as

an Exhibit. A to his Grievance No. 384574 a copy of the a DOC Confiscated Items Receipt dated 9-13-08.   (Doc. 117-8. P. 43). Plaintiff also stated in his  Grievance No. 384574 that Defendant Gormley told him "This is the price you pay" when Plaintiff 's property was being loaded in a van at the time Plaintiff was being transferred from SCI-Mahanoy to SCI-Coal Twp. (Docs. 116 & 126 at ¶ 52 and Moore Declr.,¶ 17, Doc. 117-8).   Defendants state that Defendant Gormley did not make this statement to Plaintiff and that Defendant Gormley  was not working at the time of Plaintiff's transfer on November 2, 2009.   (Doc. 116 at ¶'s 53-54).   Plaintiff states that Defendant Gormley told him "theres (sic) repercussions" while Gormley was placing his (Plaintiff 's) property in the transfer van, and that Defendant Gormley was present in the RHU on the day he (Plaintiff) was transferred.   (Doc. 126 at ¶'s 53-54).   The parties dispute whether Defendant Gormley can be seen on the November 2, 2009, video of Plaintiff 's transfer.   (Docs. 116 & 126 at ¶ 55).   The November 2, 2009, video of Plaintiff 's transfer was filed as Doc. 117, Ex. 5.

There is no dispute that Plaintiff's  Grievance No. 384574, received on October 7, 2011, was dismissed by the SCI-Mahanoy prison Grievance Coordinator on October 12, 2011, as untimely since it was not submitted within fifteen (15) days of the incident upon which his claims were based.   (Docs. 116 & 126 at ¶ 56 and Moore Declr.,¶ 16 & Doc. 117-8, p. 45).   As stated, Plaintiff discovered his missing legal property after his transfer to SCI-Coal Twp. on December 4, 2009, and was aware of his instant constitutional claims on this date.   Further, there is no dispute that the deadline for Plaintiff's grievance raising his instant constitutional claims regarding the deliberate confiscation and destruction of his legal property during his transfer to SCI-Coal Twp. in violation of his First Amendment rights was December 28, 2009. (Docs. 116 & 126 at ¶ 57 and

Moore Declr., ¶ 20).

Plaintiff then appealed the dismissal of his Grievance No. 384574 by the prison Grievance Coordinator to the Facility Manager.  On November 21, 2011, and the Facility Manager stated that Plaintiff's Grievance No. 384574 "was not submitted within 15 working days after the events upon which [his] claims are based" and  agreed that Plaintiff 's Grievance was untimely.   (Docs. 116 & 126 at ¶'s 58-59 and Moore Declr., ¶ 21 & Doc. 117-8, p. 48).

Plaintiff finally appealed the decision of  the Facility Manager affirming the dismissal of his Grievance No. 384574 to the DOC Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). Plaintiff claimed that the submission of his Grievance No. 384574 was delayed "because he had no evidence that he owned the property which he complained was missing."  The DOC Chief Grievance Officer (Dorina Varner) responded to Plaintiff's final appeal and stated that Plaintiff did not provide any evidence to show he did not have any paperwork regarding his property which allegedly went missing in November 2009, until he filed his Grievance No. 384574.  Thus, on February 17, 2012, the DOC Chief Grievance Officer found that Plaintiff's  Grievance No. 384574 was untimely and dismissed Plaintiff 's final appeal.  (Docs. 116 & 126 at ¶'s 60-63 and Moore Declr., ¶'s 16 & 22 & Doc. 117-8, p. 49).

 Therefore, we agree with Defendants that "[o]n its face, Plaintiff has failed to exhaust his [DOC] administrative remedies" with respect to his remaining First Amendment claims. (Doc. 128, p. 8).  We also find that Plaintiff procedurally defaulted on his present constitutional claims since his Grievance No. 384574 was undisputedly dismissed for being filed out of time.  Also, as stated, Plaintiff only identified Defendant Gormley in his Grievance No. 384574.  Thus, as Defendants

correctly state in their reply brief, "Plaintiff does not dispute that he failed to file a grievance regarding the claims contained in [his Amended Complaint] until almost two years after his property allegedly went missing." (Doc. 128, p. 7, citing Docs. 116 & 126 at ¶'s 48-50). Specifically, Plaintiff filed Grievance No. 384574 on October 7, 2011. Defendants also correctly state that "Plaintiff does not dispute that he named only Defendant Gormley in [Grievance No. 384574." (*Id.*, citing Doc. 125, p. 5). As indicated above, the parties dispute whether Defendant Gormley was present at SCI-Mahanoy at the time Plaintiff was being transferred on November 2, 2009. (Docs. 116, ¶ 5 & 126 ¶ 5). We find that while there are issues of material fact in dispute as to whether Defendant Gormley was present during Plaintiff 's transfer from SCI-Mahanoy and as to whether Defendant Gormley was personally involved with Plaintiff's present constitutional claims, we find that there are no genuine issues  material fact in dispute as to whether Plaintiff failed to timely exhaust his DOC administrative remedies with respect to his claims against all remaining Defendants.

In his Doc. 127 Declaration, Plaintiff avers that in September 2011, he was told by SCI-Camp Hill  Grievance Coordinator Michael Bell that he could submit a grievance regarding his claims about his confiscated legal property during his November 2, 2009, transfer from SCI-Mahanoy but that he could only name one staff member in his grievance and he had to file it with SCI-Mahanoy with attached proof that he once possessed the items. Plaintiff also avers that Bell told him he had to ask for an exception to the DOC grievance time filing requirement by stating that he did not previously have the required proof that he possessed the items allegedly confiscated. (Doc. 127, ¶ 14). Defendants contend that Plaintiff 's Doc. 127 Declaration is a sham affidavit, that there is no proof that Plaintiff tried to submit his December 4, 2009 grievance attached to his

Declaration as Att. C, and that Plaintiff 's Declaration should not be considered for present summary judgment purposes.   (Doc. 128, pp. 7-8).

In *Summy-Long v. Penn. State University*, 2009 WL 811616, *2 (M.D. Pa. 3-26-09), the Court stated:

> Although affidavits are not required to sustain or overrule a motion for summary judgment, Rule 56(e) of the Federal Rules of Civil Procedure sets forth three requirements that a submitted affidavit must meet. It requires that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). The Third Circuit has emphasized that "the affiant must ordinarily set forth facts, rather than opinions or conclusions.  An affidavit that is essentially conclusory and lacking in specific facts is inadequate to satisfy the movant's burden." *Maldonado v. Ramirez,* 757 F.2d 48, 51 (3d Cir.1985) (internal citations omitted). In other words, an affidavit, or portions of an affidavit, are only admissible for purposes of summary judgment to the extent they are at least potentially admissible at trial. *See Hurd v. Williams*, 755 F.2d 306, 308 (3d Cir.1985) (refusing to consider "facts" set forth in an affidavit opposing summary judgment because the facts were actually opinions inadmissible under Rule 701 of the Federal Rules of Evidence).

The Third Circuit has further ruled on so called "sham affidavits," clearly establishing the law for this District.  The Third Circuit in *Jiminez v. All-American Rathskeller, Inc.,* described  the "sham affidavit doctrine" and stated:

> "A sham affidavit is a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment.  A sham affidavit cannot raise a genuine issue of fact because it is merely a variance from earlier deposition testimony, and therefore no reasonable jury could rely on it to find for the nonmovant.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).  *Liberty Lobby* specifically recognizes the trial judge's power to grant summary judgment on disputed records.  (Id. at 251).   Therefore, if it is clear that an affidavit is offered solely for the purpose of defeating

summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight and that summary judgment is appropriate."

"We observed in *Baer* that not all contradictory affidavits are necessarily shams. *Baer v. Chase*, 392 F.3d 609, 625 (3d. Cir. 2004). Instead, we state that, when there is independent evidence in the record to bolster an otherwise questionable affidavit, courts generally have refused to disregard the affidavit. (Id.). Such corroborating evidence may establish that the affiant was "understandably" mistaken, confused, or not in possession of all the facts during the previous deposition. (Id.). We have also held that an affiant has the opportunity to offer a "satisfactory explanation" for the conflict between the prior deposition and the affidavit. *Hackman v. Valley Fair*, 932 F.2d 239, 241(3d. Cir. 1991). When a party does not explain the contradiction between a subsequent affidavit and a prior deposition, it is appropriate for the district court to disregard the subsequent affidavit and the alleged factual issue in dispute as a "sham," therefore not creating an impediment to grant summary judgment based on the deposition. (Id.).

*Jiminez v. All-American Rathskellar, Inc.*, 503 F.3d 247, 253-254 (3d. Cir. 2007).

Initially, as discussed, the DOC's revised policy requiring an inmate to submit proof with his grievance that he once possessed items of property he claimed were missing was not in effect until December 2010, and thus, Plaintiff could have timely submitted a grievance regarding his alleged confiscated legal property when he discovered it was missing on December 4, 2009, sans any proof that he once possessed the property. (Doc. 116, ¶ 34 & 126, ¶ 34). Also, we agree with Defendants that Plaintiff tailored his Doc. 127 Declaration to address facts raised by Defendants in their initial summary judgment brief and SMF, and that Plaintiff did not raise these contentions in his pleadings and only raised them after Defendants filed their summary judgment documents. (Doc. 128, pp. 9-10). Additionally, as Defendants point out, "[w]hile Plaintiff stated in his amended complaint that he was instructed by DOC staff that he must provide proof that he once possessed the items,

34

Plaintiff has not previously stated that he was instructed he could only raise claims under the First Amendment." (*Id.*, p. 9, citing Doc. 26, ¶'s 53 & 75). Further, we agree with Defendants that Plaintiff did not previously allege that prison staff instructed him that he could only name one staff member in his grievance, and that Plaintiff did not raise this contention until after Defendants filed their summary judgment documents. *(Id.)*.

As such, we concur with Defendants that the Court should "find Plaintiff's [Doc. 127 Declaration] to be a sham affidavit insufficient to raise a genuine issue of fact." (Doc. 128, 10).

Further, as Defendants point out the exhaustion issue is a legal question for the Court to decide, "even if that determination requires the resolution of disputed facts." (Doc. 128, p. 6). Defendants cite to the recent Third Circuit case of *Small v. Camden County*, 728 F.3d 265 (3d Cir. 2013) and to *Breeland v. Fisher*, 2013 U.S. Dist. LEXIS 158904, 2013 WL 5935046 (M.D. Pa. Nov. 5, 2013) ("Whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts.")(citing *Small v. Camden County*, *supra*). *See also Breeland v. Cook*, 2013 WL 5924592 (M.D. Pa. Oct. 31, 2013)(citing *Small v. Camden County*, *supra*); *Wakeley v. Giroux*, 2014 WL 1515681(citations omitted).

"The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow." *Rogers v. U.S.*, 696 F.Supp.2d 472, 483 (W.D.Pa. 2010)(citing *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000)).

Furthermore, because the exhaustion issue is a threshold issue and because it is undisputed Plaintiff failed to timely exhaust his DOC administrative remedies, we find that the Court does not

need to address Defendants' pending Motion for Summary Judgment with respect to their contentions that they are entitled to judgment on the merits of Plaintiff's remaining First Amendment claims. *See Lasko v. Hendershot*, 2006 WL 2828787 (M.D. Pa. 9-29-06); *Hookey v. Lomas*, 2010 WL 936230, *6 (M.D. Pa. 3-15-10); *Wallace v. Miller*, —Fed.Appx.—, 2013 WL 5878903, *2 n. 2 (3d Cir. Nov. 4, 2013).

A prisoner is barred from bringing a civil rights action in federal court "until such administrative remedies as are available have been exhausted." 42 U.S.C. §1997e(a). As the Courts have repeatedly held, it is well-settled that the Plaintiff inmate must exhaust his administrative remedies prior to filing a civil rights suit. *See Mitchell, supra*; *Ahmed v. Dragovich*, 297 F.3d 201, 209 & n. 9 (3d Cir. 2002). In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prison conditions, including § 1983 actions or actions brought pursuant to any other federal law, including this *Bivens* action. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.; Woodford v. Ngo,* 126 S Ct. 2378 (2006); *Fortune v. Bitner*, 2006 WL 2769158, *7 (M.D.Pa.)("The PLRA mandates that inmates 'properly' exhaust administrative remedies before filing suit in federal court.")(citation omitted). Further, the Defendants have the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002); *Fortune v. Bitner*, 2006 WL 2769158, *7.

"A prisoner must exhaust all available administrative remedies before initiating a federal lawsuit." *Lombardi v. Pugh*, 2009 WL 1649908, *3(M.D. Pa. 6-9-09)(citation omitted). Further,

"the exhaustion requirement is not satisfied if the inmate files an action in the district court prior to completing the administrative remedy process." *Id*.(citation omitted); *See also Mitchell v. Dodrill*, 696 F.Supp.2d at 463-64(Court stated that "most circuit courts are in agreement that a prisoner may not satisfy the PLRA's exhaustion requirement by exhausting administrative remedies *after* initiating suit in federal court.")(emphasis original)(citations omitted).

The Court in *Mitchell v. Dodrill*, 696 F.Supp.2d at 465, stated:

> The United States Court of Appeals for the Third Circuit has not issued a precedential opinion on the issue. However, in a non-precedential opinion, the Court found that the lower court had properly dismissed the plaintiff's complaint because his exhaustion attempt took place after he filed his *Bivens* claim. *Oriakhi v. United States,* 165 Fed.Appx. 991, 993 (3d Cir.2006) (not precedential). "[T]he district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred." *Id.* (quoting *Johnson,* 340 F.3d at 627–28). The Court further stated that "[t]he fact that [the plaintiff] completed the administrative review process before the District Court reached the exhaustion question is of no consequence. Indeed, there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court." *Oriakhi,* 165 Fed.Appx. at 993 (citing *Johnson,* 340 F.3d at 627–28). (not precedential).

The Third Circuit has repeatedly stated that the PLRA "requires that inmate-Plaintiffs exhaust all administrative remedies prior to filing suit in federal court." *Banks v. Roberts*, 2007 WL 3096585, * 1 (3d Cir. 10-19-07)(Non-Precedential) (citation omitted).  The *Banks* Court also noted that a futility exception to the PLRA's mandatory exhaustion requirement is completely precluded.  *Id.; Spruill v. Gillis,* 372 F. 3d 218, 228-230 (3d Cir. 2004); *see also Nyuis v. Reno*, 204 F.3d 65, 71 (3d

37

Cir. 2000).  *See also Cooper v. Sniezek*, 2010 WL 3528848, *7-*8 (M.D. Pa. 9-7-10); *Mitchell v. Dodrill*, 696 F.Supp.2d at 463-64.

The *Cooper* Court stated:

> A prisoner must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through the grievance process. *See Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Booth v. Churner,* 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). "[I]t is beyond the power ... of any ... [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno,* 204 F.3d 65, 73 (3d Cir.2000) (quoting *Beeson v. Fishkill Corr. Facility,* 28 F.Supp.2d 884, 894-95 (S.D.N.Y.1998) (citing *Weinberger v. Salfi,* 422 U.S. 749, 766, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis,* 204 F.3d at 71. The PLRA also mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court. *Woodford v. Ngo,* 548 U.S. 81, 92, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."*Id.* at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 93 (quoting *Nussle,* 534 U.S. at 525). Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis,* 372 F.3d 218, 227-32 (3d Cir.2004).

2010 WL 3528848, *7.

We agree with Defendants that "DC-ADM 804 mandates that an inmate's grievance identify anyone who may have information that could be helpful in resolving the grievance and that courts have recognized that an inmate's failure to identify such individuals results in procedural default."

38

(Doc. 128, p. 10).  We find  that Pennsylvania DOC's inmate grievance system does mandate that inmates name all relevant persons.  *See Robles v. Casey*, 2012 WL 6931972 (M.D. Pa. Sept. 27, 2012) adopted by 2013 WL 308699 (M.D. Pa. Jan. 25, 2013).  Further,  DOC Policy DC-ADM 804, entitled "Inmate Grievance System Policy," reads in relevant part: "The inmate will identify any person(s) who may have information that could be helpful in resolving the grievance." *Id*.  As the Court in *Robles* found,  the Third Circuit in *Spruill* interpreted this DOC Policy to mean that an inmate will be in procedural default unless he can adequately explain why he neglected to name a defendant in his grievance. *Id.*(citing 372 F.3d at 226).

We agree with Defendants that  Plaintiff Real has not properly exhausted his available administrative remedies with respect to his remaining First Amendment claims against  Dunkle, Malick, Murphy, and Gormley and, we  will recommend that these remaining Defendants be granted summary judgment in their favor since Plaintiff has procedurally defaulted on his claims against them.  *See Spruill*, 372 F.3d at 234; *Robles, supra*.

The U.S. Supreme Court held in *Jones* that proper exhaustion of administrative prison remedies requires compliance "'with the applicable procedural rules,' [ ] - rules that are defined not by the PLRA, but by the prison grievance process itself." 549 U.S. at 218 (citation omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). The Supreme Court found that although the requirement for grievance detail will vary among different prison systems, it is these individual requirements that delineate what constitutes proper exhaustion. 549 U.S. at 218. Accordingly, in the present case,  we must look  to the grievance procedure in place for inmates of the Pennsylvania DOC. *See Gravley v. Tretinik*, 414 F. App'x 391, 393-94 (3d Cir. 2011); *Spruill*, 372

F.3d at 231-32; *Bibbs v. Klem*, Civil No. 3:CV-08-2279, 2011 WL 838908, at *3 (M.D. Pa. Mar. 4, 2011); *Miller v. Schuylkill Cnty. Prison*, Civil No. 1:CV-07-0331, 2007 WL 3342766, at *4 (M.D. Pa. Nov. 9, 2007).

The Third Circuit has found three reviewing stages within the Pennsylvania DOC's grievance system: "Initial Review (DC-ADM-804 Part VI.B), which addresses the inmate's filed grievance; the first appeal from the Initial Review, known as Appeal to Facility Manager (DC-ADM-804 Part VI.C); and a second and final appeal, the Appeal to Secretary's Office of Inmate Grievances and Appeals (DC-ADM-804 Part VI.D)." *Spruill*, 372 F.3d at 232; *see also Bibbs*, 2011 WL 838908, at *4. As discussed, Plaintiff failed to timely exhaust his grievance in accordance with the DOC administrative remedy process, including his remaining First Amendment claims.  Also, in his untimely Grievance No. 384574 filed on October 7, 2011, Plaintiff only identified Defendant Gormley. Thus, we must now determine whether Defendants' assertion that Plaintiff failed to identify the other remaining Defendants, namely, Dunkle, Malick, and Murphy, and that he failed to timely raise his remaining claims implicates a procedural default of his claims. *Spruill*, 372 F.3d at 232; *see also Bibbs*, 2011 WL 838908, at *4.

In *Spruill*, the Third Circuit held that the text of the Pennsylvania's DOC policy concerning identifying specific individuals "is mandatory, or nearly so: 'The inmate shall include a statement of the facts relevant to the claim.... The inmate should identify any persons who may have information that could be helpful in resolving the grievance.'" 372 F.3d at 234 (quoting DC-ADM 804, Part VI.A.1.d.). Defendants' undisputed Doc. 116, SMF ¶'s 11-33, state the requirements for an inmate to sufficiently identify any person who was information that would be helpful in resolving

a grievance. The *Spruill* Court found that while, ordinarily, an inmate's failure to name a key individual would result in procedural default for any potential claims against that individual, such a default may be excused when the responding grievance officer actually identifies the individual at issue in his or her "Initial Review Response." 372 F.3d at 234.[15]  As discussed above, we find in the instant action that Plaintiff Real did not specifically name Defendants Dunkle, Malick and Murphy, in his grievance and that he did not timely file his grievance.   Thus, we find procedural default with respect to Plaintiff's remaining First Amendment claims against remaining  Defendants Dunkle, Malick, Murphy, and Gormley. *See Robinson v. Johnson*, 343 Fed. Appx. 778 (3d Cir. 2009); *Williams v. Beard*, 482 F.3d 637, 640 (3d Cir. 2007); *Robles, supra*.

Therefore, we  find that Plaintiff's remaining constitutional  claims as against Defendants Dunkle, Malick, Murphy, and Gormley are procedurally defaulted.  *See Spruill*, 372 F.3d at 234; *McClain v. Kale*, Civil No. 1:10-CV-00035, 2012 WL 2192242, at *3 (M.D. Pa. Apr. 23, 2012)(finding that the plaintiff-inmate procedurally defaulted his claim against a certain corrections officer because he did not identify the officer in his prison grievance and because there was no basis on which the reviewing grievance coordinator would have realized that the officer was involved in the underlying events).

Because the exhaustion issue is a threshold issue and we find Plaintiff failed to properly exhaust his administrative remedies with respect to his remaining constitutional  claims as against

---

[15]The *Spruill* Court indicated that because the goal of the identification requirement is to put prison officials on notice, that purpose is achieved when the prison officials themselves acknowledge that a certain unidentified individual is "fairly within the compass of the prisoner's grievance." *Spruill*, 372 F.3d at 234.

41

Defendants Dunkle, Malick, Murphy, and Gormley, we find that Defendants' Motion for Summary Judgment **(Doc. 115)** should be granted as to these Defendants.

## VI.   Recommendation.

Based on the foregoing, it is respectfully recommended that Defendants' Motion for Summary Judgment **(Doc. 115)** be granted as to all of Plaintiff's remaining claims against all remaining Defendants.   It is also recommended that Judgment be entered in favor of all remaining Defendants and against Plaintiff Real.

Finally, it is recommended that this case be closed.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: June 11 2014**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

FERDANDO REAL,                              :        CIVIL ACTION NO. **3:CV-11-2071**
                                            :
      Plaintiff                       :        (Judge Brann)
                                            :
      v.                              :        (Magistrate Judge Blewitt)
                                            :
LT. DUNKLE, *et al.*,                       :
                                            :
      Defendants                      :

**NOTICE**

    **NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **June 11, 2014.**

    Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis
of that record.  The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.


Failure to file timely objections to the foregoing Report and Recommendation may constitute

a waiver of any appellate rights.




_____     **s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**




**Dated: June 11 2014**